**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

|  |  |  |
|---|---|---|
| In re CARYN DEVINS STRICKLAND, | ) ) ) | No. 2024-_____ |
| Petitioner. | ) ) | [No. 1:20-cv-00066] |
| _____ | ) | |

**PETITION FOR A WRIT OF MANDAMUS TO THE
UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA**

Cooper Strickland
N.C. Bar No. 43242
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703

*Counsel for Petitioner*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................iii

INTRODUCTION ........................................................................... 1

STATEMENT OF FACTS ............................................................... 3

    A.    For Nearly Two Years, the District Court Refuses to Rule on Plaintiff's PI Motion........................................... 3

        1.    The district court imposes an "unfair" and "inappropriate" choice of requiring Plaintiff to proceed to an expedited trial without discovery or forgo her PI motion .......................................... 3

        2.    Following trial *a year and a half* after Plaintiff's PI motion was filed, the district court has continued to delay and even erroneously stated that Plaintiff is "not now seeking a [PI].".............. 5

    B.    The District Court's Own Repeated Statements About the Strength of Plaintiff's Evidence Demonstrate that She Has Shown a Likelihood of Success on the Merits ............................................................................. 9

REASONS WHY THE WRIT SHOULD ISSUE ............................. 14

I.    The District Court Is Clearly And Indisputably Wrong To Refuse To Rule on Plaintiff's PI Motion For Nearly Two Years ............................................................................ 14

II.    The District Court's Repeated Statements About The Strength of Plaintiff's Case Show That She Is Entitled To A PI ..................................................................................... 20

III.    This Court Has Several Options To Remedy The District Court's Clear and Indisputable Violation of Plaintiff's Rights....................................................................... 23

CONCLUSION ................................................................... 26

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abbott v. Perez*,
138 S. Ct. 2305 (2018) ................................................................. 17

*Am. Humanist Ass'n v. Greenville Cty. Sch. Dist.*,
571 F. App'x 250 (4th Cir. 2014) ................................................. 25

*Cedar Coal Co. v. United Mine Workers*,
560 F.2d 1153 (4th Cir. 1977) ........................................... 15, 16, 24

*Cheney v. United States Dist. Court*,
542 U.S. 367 (2004) ..................................................................... 14

*Gellman v. Maryland*,
538 F.2d 603 (4th Cir. 1976) ........................................................... 5

*Henry v. Greenville Airport Comm'n*,
284 F.2d 631 (4th Cir. 1960) ........................................................ 21

*In re A & H Transp., Inc.*,
319 F.2d 69 (4th Cir. 1963) .......................................................... 23

*In re Fort Worth Chamber of Commerce, No. 24-10266*,
2024 U.S. App. LEXIS 8336 (5th Cir. Apr. 5, 2024) ........... 15, 16, 24

*In re Hicks*,
118 F. App'x 778 (4th Cir. 2005) .................................................. 24

*In re Hicks*,
279 F. App'x 236 (4th Cir. 2008) (unpub. per curiam) .................. 24

*In re Strickland*,
87 F.4th 257 (4th Cir. 2023) ........................................................ 4, 7

*Int'l Bhd. of Teamsters, etc. v. Ward*,
501 F.2d 456 (4th Cir. 1974) ........................................................ 23

*Leaders of a Beautiful Struggle v. Baltimore Police Dep't*,
2 F.4th 330 (4th Cir. 2021) (en banc) ..................................... 20, 23

*League of Women Voters of N.C. v. North Carolina*,
769 F.3d 224 (4th Cir. 2014) ............................................. 13, 20, 21

*Lewis v. Bloomsburg Mills, Inc.*,
608 F.2d 971 (4th Cir. 1979) ............................................................. 24

*Madden v. Myers*,
102 F.3d 74 (3d Cir. 1996) ........................................................... 24, 25

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*,
915 F.3d 197 (4th Cir. 2019) ......................................................... 3, 21

*Mt. Graham Red Squirrel v. Madigan*,
954 F.2d 1441 (9th Cir. 1992) ............................................................ 16

*Nwaubani v. Grossman*,
806 F.3d 677 (1st Cir. 2015) ........................................................... 4, 5

*Pughsley v. 3750 Lake Shore Drive Coop. Bldg.*,
463 F.2d 1055 (7th Cir.1972) .............................................................. 5

*Rolo v. Gen. Dev. Corp.*,
949 F.2d 695 (3d Cir. 1991) ............................................................. 16

*Rosario-Urdaz v. Rivera-Hernandez*,
350 F.3d 219 (1st Cir. 2003) ............................................. 3, 18, 21, 22

*Strickland v. United States*,
32 F.4th 311 (4th Cir. 2022) ............................................................... 3

*United States v. Lynd*,
301 F.2d 818 (5th Cir. 1962) ............................................................. 16

*United States v. Texas*,
144 S. Ct. 797 (2024) ................................................................. 15, 18

**Statutes and Rules**

28 U.S.C. § 1292 ...................................................................... 15, 16, 24

28 U.S.C. § 1657 ....................................................................... 2, 14, 20

Fed. R. Civ. P. 40 ......................................................................... 2, 14

Fed. R. Civ. P. 52 ............................................................................ 25

Fed. R. Civ. P. 65 ...................................................................... *passim*

iv

Fed. R. Evid. 801 .................................................................. 12, 21

Fed. R. Evid. 803 ........................................................... 10, 12, 21

**INTRODUCTION**

This case involves a former assistant federal public defender's claims that judiciary officials were deliberately indifferent to sexual harassment and subjected her to a fundamentally unfair process for resolving her claims of workplace discrimination. The evidence in this case includes findings by the Fourth Circuit's Chief Judge that First Assistant J.P. Davis, Plaintiff's supervisor, "proposed an unsavory quid pro quo" and Federal Public Defender Anthony Martinez responded to her complaints by (a) using an "inappropriate" and "ill-advised" metaphor comparing the First Assistant's relationship with Plaintiff to a "marriage" and ordering her to "compromise"; (b) "call[ing] out" Plaintiff for seeking "advice and guidance" on her legal rights; (c) making "callous," "minimizing," and "insensitive" remarks, including words to the effect that "at least you weren't touched"; and (d) "shifting responsibility" by failing to accept blame. ECF No. 387, at 3. The record also includes text messages from the First Assistant stating that Plaintiff needed to "***get slapped***" and "***smacked a bunch***," and allegations that the Defender used "crude language" about women, including by referring to a female Assistant United States Attorney as a "***fucking bitch.***" ECF No. 387, ¶ 28e; Tr. 12/18/23, ECF No. 402, at 95–97; Tr. 12/14/23, ECF No. 401, at 159 (Plaintiff's proffer); *see infra*, at 8 n.1. Moreover, even though the Investigator found that the Defender was "biased" against Plaintiff and "could cause more

1

damage if he were involved in the process," Defendants refused to disqualify him. ECF No. 387, at 4–6. In defense of this conduct, Defendants assert that Plaintiff "experienced sexual harassment only in her mind." Tr. 1/4/24, ECF No. 398, at 4.

The basic facts of this case are straightforward. Yet, the district court has delayed ruling on Plaintiff's motion for a preliminary injunction ("PI") for *nearly two years* since it was filed in July 2022. *See* ECF No. 125. *Trial on the merits* was held more than four months ago, in December 2023, but the district court still has not ruled on the PI motion or entered final judgment.

In fact, during closing arguments, when Plaintiff renewed her request for a PI, the district court even "correct[ed]" Plaintiff and stated that "***[y]ou're not now seeking a preliminary injunction. You're seeking an injunction, and I will take that under advisement.***" Tr. 1/4/24, ECF No. 398, at 39 (emphasis added). The district court's statements misrepresent the law and indicate that, following years of delay, the district court has disregarded Plaintiff's PI motion. These actions blatantly violate statutes and rules that require district courts to expedite a decision on preliminary relief, including during a "consolidated" trial. *See* U.S.C. § 1657(a); Fed. R. Civ. P. 40, 65(a). While the irreparable harm caused by the district court's continued delay cannot be undone, this Court must intervene to prevent any further injustice.

# STATEMENT OF FACTS

**A.** **For Nearly Two Years, the District Court Refuses to Rule on Plaintiff's PI Motion.**

      **1.** **The district court imposes an "unfair" and "inappropriate" choice of requiring Plaintiff to proceed to an expedited trial without discovery or forgo her PI motion.**

In April 2022, this Court reversed the district court's order dismissing Plaintiff's case in its entirety. *Strickland v. United States*, 32 F.4th 311, 321 (4th Cir. 2022). The Court limited her recovery to prospective equitable relief and held that she cannot recover back pay. *Id.* at 366, 36–71. Following remand to the district court, in July 2022, Plaintiff moved for a PI, since she cannot recover back pay during this litigation. ECF No. 125. It is "nose-on-the-face plain" that the unavailability of back pay is "irreparable harm." *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003); *see also Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 218 (4th Cir. 2019) ("unrecoverable" monetary losses are "irreparable injury justifying preliminary relief").

In September 2022, the district court "collapse[d]" Plaintiff's PI motion with trial on the merits, which previously had been scheduled for a full year later, in September 2023. Entry Order Dated September 15, 2022. The district court ordered that Plaintiff must proceed to a "trial on the merits" within "a week, two weeks," without any discovery, or else forgo her right to a PI until the trial

previously scheduled for September 2023. ECF No. 149, at 4, 7. It did so over Plaintiff's repeated objections that she was being subjected to an unfair and coercive "Hobson's choice" by being required either to proceed to an expedited trial on the merits without discovery or else forgo a PI. *See* Add. 4–133.

This Court even expressly recognized that the district court "advised Strickland that she had the choice of proceeding, without discovery, to a consolidated trial/hearing within a relatively short period of time or, alternatively, proceeding with discovery and then having a consolidated trial/hearing in September 2023." *In re Strickland*, 87 F.4th 257, 259 (4th Cir. 2023). The district court's imposition of this "choice" was unlawful. Indeed, the district court judge previously has been admonished by his home circuit for engaging in precisely this "unfair[]" and "inappropriate[]" conduct. *Nwaubani v. Grossman*, 806 F.3d 677, 680 n.7 (1st Cir. 2015). In *Nwaubani*, the First Circuit stated as follows:

> [W]e are troubled that the district court, in consolidating the preliminary injunction hearing with a trial on the merits may have unfairly put [the plaintiff] (over his objection) in a position where he was forced to forego a ruling on his interlocutory request for injunctive relief in order to conduct adequate discovery to prepare for a trial on the merits. . . .
>
> As Judge (later Justice) Stevens, writing for the Seventh Circuit, has observed, "[a]t times, particularly if the parties consent, if discovery has been concluded or if it is manifest that there is no occasion for discovery, consolidation may serve the interests of justice," but "[a] litigant applying for a preliminary injunction should seldom be required either

to forego discovery in order to seek emergency relief, or to forego a prompt application for an injunction in order to prepare adequately for trial." *Pughsley v. 3750 Lake Shore Drive Coop. Bldg.*, 463 F.2d 1055, 1057 (7th Cir.1972). We are concerned that the district court may have inappropriately used Rule 65(a)(2) to impose such a Hobson's choice here.

*Id.* In addition to being the subject of admonishment by the district court's home circuit, the district court's actions violate longstanding Fourth Circuit precedent disavowing this type of Hobson's choice and holding that ordering a consolidated trial without any discovery "comes perilously close to a violation of due process." *Gellman v. Maryland*, 538 F.2d 603, 604, 606 (4th Cir. 1976). They also violate the Federal Rules of Civil Procedure, which provide that "[t]he fact that the proceedings have been consolidated *should cause no delay in the disposition of the application for the [PI]*, . . . [in fact,] to consolidate the proceedings *will tend to expedite the final disposition of the action*." Fed. R. Civ. P. 65(a)(2), Notes of Advisory Comm. on Rules, 1966 amend. (emphasis added)).

> **2. Following trial *a year and a half* after Plaintiff's PI motion was filed, the district court has continued to delay and even erroneously stated that Plaintiff is "not now seeking a [PI]."**

Following its order "collaps[ing]" the PI with trial on the merits, the district court did not hold the trial until December 2023, nearly a year and a half after the PI motion was filed. *See* ECF Nos. 398–403. Now, four months later, in April

2024, the district court still has not issued either a ruling on Plaintiff's July 2022 request for preliminary relief or a final judgment following trial.

Trial was originally scheduled to conclude by December 18, 2023. Tr. 11/16/23, ECF No. 405, at 4. During the trial, however, the court stated that it would order closing arguments "early in the new year," that is, in 2024, to "give me the opportunity, which I have not completed, of reading all – going through all the exhibits and reading all the depositions and making determinations as to the designations which are in dispute." Tr. 12/18/23, ECF No. 402, at 155. Previously, the court had assured the parties that it would review this evidence *before* any witness testimony had begun. *See* Tr. 7/27/23, ECF No. 262, at 22 (court "will have read" the depositions before trial); Tr. 11/16/23, ECF No. 305, at 20 (court would review evidence "prior to" testimony). The court also stated that "once final arguments have been held," it would ask the parties "whether you want me to stay my hand in preparing my findings and rulings for any period of time so that you can discuss settlement." Tr. 12/19/23, ECF No. 403, at 71. The court stated that "if you don't [agree to discuss settlement], I'll get to work on preparing them just as soon as the final arguments are over." *Id.* at 72.

Thereafter, closing argument was held on January 4, 2024. ECF No. 398. Following the arguments, the district court asked whether the parties would "agree" for the court to "stay my hand so you can talk among yourselves for a brief

period" about settlement. Tr. 1/4/24, ECF No. 398, at 39. Plaintiff responded that "[w]e don't believe that further settlement discussions would be productive at this point," in part, to avoid any further delay in the district court's ruling. *Id.*; *cf. Strickland*, 87 F.4th at 261 (denying Plaintiff's prior mandamus petition, in part, because Plaintiff had participated in court-ordered mediation).

During closing argument, when Plaintiff again renewed her PI motion, the district court also stated, "[o]ne correction, Ms. Strickland. ***You're not now seeking a preliminary injunction. You're seeking an injunction, and I will take that under advisement.***" ECF No. 398, at 39 (emphasis added). Like the district court's "Hobson's choice" order, which unfairly required Plaintiff to forgo her procedural rights or else forgo a PI ruling, the district court's statement that she "was no longer seeking a [PI]" once trial was over contradicts Federal Rule of Civil Procedure 65. In fact, Rule 65 specifically provides that consolidation of a PI motion with trial "*should cause no delay*" in ruling on a PI motion:

> The fact that the proceedings have been consolidated *should cause no delay* in the disposition of the application for the preliminary injunction, for the evidence will be directed in the first instance to that relief, and the preliminary injunction, if justified by the proof, *may be issued in the course of the consolidated proceedings.*

Fed. R. Civ. P. 65, Notes of Advisory Comm. on Rules, 1966 Amend. (emphasis added). Nowhere does this rule state that a district court can render a PI motion moot by delaying the trial and then concluding that the plaintiff is "not now

seeking a [PI]" because the trial is over, thus allowing the court to evade a PI

motion without ruling and to delay a final judgment even further. ECF No. 398, at

39. To the contrary, the rule expressly provides otherwise: it states that

consolidation "*should cause no delay* in the disposition of the application for the

[PI]," and a PI "*may be issued in the course of the consolidated proceedings.*"

 In the interim, on March 4, 2024, *two full months* after closing arguments,

the district court's courtroom deputy emailed the parties inquiring about a "final

exhibit list" and requesting "electronic copies of all exhibits," which had already

been provided to the court electronically and by a courtesy hardcopy before trial.

*See* ECF No. 405, at 22. Then, on March 21, 2024, more than three months after

the trial had concluded, the district court issued an order to "tie up some

evidentiary loose ends" that, previously, it had told the parties it would resolve

between the close of evidence and closing arguments in January 2024.[1] ECF No.

---

[1] This order still did not resolve all outstanding evidentiary issues. For example, the district court has not ruled on whether it will admit the testimony of Plaintiff's workplace investigations expert, Vida G. Thomas, who concluded that Defendants' response to Plaintiff's complaint "fell below well-accepted HR practices." *See* ECF 339-1, 2. Similarly, though the district court excluded Plaintiff's evidence of other EDR complaints entirely—which include allegations that Defender Martinez used "crude language regarding women and members of the LGBTQIA+ community," including by referring to a female Assistant United States Attorney as a "fucking bitch," and that First Assistant Davis used "sexual hand gestures"— the court has not ruled on whether Plaintiff may file her offer of proof regarding other EDR complaints publicly or under seal. The court's failure to do so has prevented Plaintiff from filing those materials as part of the record for appellate review. *See* ECF No. 410.

404, at 1.  Now, it is April 2024, and more than four months have passed since this five-day bench trial (consisting of half days) without a ruling.

Even as the district court has continued to delay, it also has repeatedly recognized the importance of ruling promptly on Plaintiff's PI motion, including during trial if necessary.  Indeed, during an October 2022 hearing—more than a year and a half ago—in which it affirmed its order consolidating the trial, the district court stated, "[i]f we go along in the hearing and I come to a belief at the end of the liability hearing that ***an immediate injunctive remedy is required, I won't hesitate to grant it.***"  Tr. 10/31/2022, ECF No. 171, at 36 (emphasis added).  These statements starkly contrast with the district court's January 4, 2024 statements, well over a year later, that "[Y]ou're not now seeking a preliminary injunction.  You're seeking an injunction."  ECF No. 398, at 39.  Similarly, during a hearing in June 2023, almost a full year ago now, the district court recognized that "there is both a private interest here on the part of Ms. Strickland, as she wants to win this case, and . . . if we get to damages, her damages are going to be affected by the time that we take to adjudicate it."  Tr. 6/21/23, ECF No. 267, at 12.

### B.   The District Court's Own Repeated Statements About the Strength of Plaintiff's Evidence Demonstrate that She Has Shown a Likelihood of Success on the Merits.

The district court has repeatedly recognized that the facts of this case are "generally undisputed."  Tr. 11/16/23, ECF No. 405, at 10–11.  Indeed, while the

parties submitted many exhibits for the Court's review, the basic facts of this case can be understood based on a small handful of documents, which the district court itself has repeatedly identified. *See, e.g.*, ECF No. 387, at 1–7.

For example, in its summary judgment opinion issued in July 2023, a full year after Plaintiff's PI motion was filed in July 2022, the district court summarized the "undisputed evidence" regarding the Defender's deliberate indifference to his First Assistant's sexual harassment. ECF No. 258, at 5–7. Among this evidence, the district court explained that the Fourth Circuit's Chief Judge had issued a "letter of reprimand" against Defender Martinez as a result of the wrongful conduct investigation into Plaintiff's allegations under Chapter IX of the EDR Plan. *Id.* at 6. As the district court explained, "[t]he factual findings in this letter constitute an unimpeached public record pursuant to Fed. R. Evid. 803(8)(A)(iii)." *Id.* The court concluded that "[t]he underlying facts" supporting Plaintiff's discrimination claim "appear to be undisputed." *Id.* at 7.

By "letter of reprimand," the district court's opinion refers to a letter dated May 28, 2019, which was delivered by the Circuit Executive on behalf of the Chief Judge. The letter explained that the First Assistant had subjected Plaintiff "to unwanted advances . . . , unreasonably interfered with her work assignments, and even proposed an ***unsavory quid pro quo proposal*** on her request for a promotion

and raise." ECF No. 387, at 3 (emphasis added). The letter also makes the

following findings against the Defender:

- **"Marriage Metaphor"**: "After attempting to resolve several disagreements between Ms. Strickland and Mr. Davis, you had used an ill-advised metaphor, comparing the relationship between Ms. Strickland and Mr. Davis as a 'marriage,' with the parties needing to 'compromise' and 'meet in the middle.' Ms. Strickland said that she was 'shocked' and 'offended' at the reference, believing that it was inappropriate to describe any professional relationship between a male supervisor and female subordinate as a 'marriage.' The metaphor was especially inappropriate given the context that Ms. Strickland had raised concerns with Mr. Davis's behavior towards her."

- **"No Physical Touching"**: "Ms. Strickland denied that Mr. Davis had touched her inappropriately, but she repeated that Mr. Davis made her feel uncomfortable and threatened. Investigator Beam found that you had said, 'at least you weren't touched,' or words to that effect. The investigator concluded that your remarks were callous, minimizing, insensitive, and contributed to the distress that Ms. Strickland felt."

- **"Disapproval of Seeking Outside Advice"**: "Ms. Strickland had also sought advice and guidance from the Fair Employment Opportunity Office at the Administrative Office of the U.S. Courts on her civil rights as a judiciary employee. The investigator found that you had 'called out' Ms. Strickland for seeking legal advice from that office, which further eroded trust between you and Ms. Strickland and exacerbated the deteriorating situation in your office."

- **"Shifting Responsibility"**: "Finally, the investigator noted that you had said you were being blamed for matters that you had nothing to do with. Ms. Strickland reported that she felt 'offended' by your protest, which she

> perceived as disapproving her right to seek outside advice and counsel from the AO Fair Employment Opportunity Office. This, the investigator concluded, contributed to your mishandling of the matter."

*Id.*

During the "further final pretrial conference" in November 2023, the district court similarly remarked that "the plaintiff points out various factual matters which, as near as I can see, are generally undisputed and constitute admissible evidence and, . . . if I draw inferences in favor of the plaintiff, result in a liability finding." Tr. 11/16/23, ECF No. 406, at 10–11. The court explained that the "letter of reprimand" for the Defender is "a government report under [Rule] 803(8)" and "an admission" under Rule 801(d)(2)(D). *Id.* at 11.

During that hearing, the court also referenced "the e-mail in which the investigator . . . does draw the conclusion that [Defender] Martinez was biased," and stated that the email "may well be powerful evidence" and is "an admission by the Judiciary." *Id.* The email to which the court is referring is an exchange dated January 13, 2019, when, based on the Investigator's recommendation that the Defender be disciplined, the EDR Coordinator asked her whether the Defender should be disqualified from Plaintiff's EDR proceeding. Her answer was an emphatic yes:

> On Jan 13, 2019, at 5:53 PM, Heather Beam <Heather_Beam@ncwp.uscourts.gov> wrote:
>
> Hey James,
>
> I truly believe Tony is biased in this case involving JP and Caryn as far as the sexual harassment is concerned. From my conversations with him I know he feels Caryn is attempting to exploit this situation to get the transfer to Asheville, however it has created a bias in him to look at this case from a neutral perspective. I also believe he lacks the experience and understanding of exactly how this process works. I am concerned he could cause more damage if he were involved in the process at this point.
>
> Caryn had requested Tony be disqualified as she felt she was retaliated against after she submitted her claim of Wrongful Conduct. Although retaliation in my investigation was unfounded, I still think in a good faith effort to resolve this the circuit should consider disqualifying him based on the contentious nature of the current situation. I would strongly recommend mediation at this point with perhaps one of the individuals we discussed the other day.
~

ECF No. 387, at 6. Despite the Investigator's findings that the Defender was "biased" against Plaintiff and "could cause more damage if he were involved in the process at this point," the Chief Judge denied Plaintiff's disqualification request without explanation. *Id.* at 4–6.

During the trial, the court again repeated that the "evidence of the investigator calling [the Defender] biased" and the "actual result of the investigation . . . would warrant a finding in favor of Ms. Strickland." Tr. 12/11/23, ECF No. 406, at 5. Given that a plaintiff seeking a PI "need not show a certainty of success," and "undisputed evidence" favoring the plaintiff's claims will justify a PI, the district court's continued failure to rule on Plaintiff's PI motion more than four months after trial, and nearly two years after the PI motion was filed, violates binding precedent. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 246–47 (4th Cir. 2014) (citation omitted).

## REASONS WHY THE WRIT SHOULD ISSUE

A writ of mandamus requires a showing that the petitioner has a "clear and indisputable" right to relief, there is no other adequate remedy, and issuance of the writ "is appropriate under the circumstances." *Cheney v. United States Dist. Court*, 542 U.S. 367, 381 (2004). "These hurdles, however demanding, are not insuperable," and the circumstances here meet this showing. *Id.*

## I. The District Court Is Clearly And Indisputably Wrong To Refuse To Rule On Plaintiff's PI Motion For Nearly Two Years.

The district court's delay in ruling on Plaintiff's PI motion is now approaching *two years*. This delay violates rules, statutes, and Supreme Court precedents requiring that a district "shall expedite" the decision of a PI motion. *See* 28 U.S.C. § 1657(a) ("[T]he court *shall expedite* the consideration of . . . any action for temporary or preliminary injunctive relief." (emphasis added)); Fed. R. Civ. P. 40 ("[T]he court *must* give priority to actions entitled to priority by a federal statute.") (emphasis added)). The district court's extreme delay establishes not only a clear and indisputable right to relief, but also that mandamus is warranted because there is no other adequate remedy, since the district court has continued in its refusal to rule on the PI. Indeed, the district court's statement that Plaintiff is "not now seeking a PI" since trial is over demonstrates that the district court has disregarded Plaintiff's PI motion entirely, and, on its own, is sufficient to demonstrate clear and indisputable error. ECF No. 398, at 39. Moreover, this

erroneous statement confirms that the district court has refused to grant the PI and could be alternatively construed as a denial of the PI, particularly in light of the court's continued delay.  *See* 28 U.S.C. § 1292(a).

Issuance of the writ also would be appropriate.  In fact, a Supreme Court justice recently expressed concern at "the risk" that a lower court could use its "docket-management authority" to avoid deciding the merits of an appeal involving a PI even for *four weeks*.  *Cf. United States v. Texas*, 144 S. Ct. 797, 798–99 (2024) (Barrett, J., concurring).  While that decision involved a stay pending appeal rather than the merits of the underlying PI motion, it illustrates that the nearly two-year delay at issue here is an extreme outlier, unsupported by rules, statutes, or precedents, warranting intervention by a higher court.  *See id.* at 800 (stating that "[t]he time may come" when a court "is forced to conclude" that a lower court has effectively avoided review using administrative procedures and to "review [the court's ruling] accordingly").

Courts have recognized that "a motion for preliminary injunctive relief 'must be granted *promptly* to be effective,' so if a district court does not timely rule on a [PI] motion, it can effectively deny the motion."  *In re Fort Worth Chamber of Commerce*, No. 24-10266, 2024 U.S. App. LEXIS 8336, at *7 (5th Cir. Apr. 5, 2024) (quoting 16 Charles Allen Wright & Arthur Miller, Federal Practice & Procedure § 3924.1 (3d ed.)); *see also Cedar Coal Co. v. United Mine Workers*,

15

560 F.2d 1153, 1161 (4th Cir. 1977); *Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1449–50 (9th Cir. 1992); *Rolo v. Gen. Dev. Corp.*, 949 F.2d 695, 703 (3d Cir. 1991); *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962). Noting that delays of three, four, and eight months have been recognized as an effective denial of a PI, the Fifth Circuit recently observed that "simply sitting on a [PI] motion for too long can effectively deny it." *In re Fort Worth*, 2024 U.S. App. LEXIS 8336, at *7, n.12. That is true even if the district court takes other actions in the case, but simply does not rule on the PI motion. *See id.* (holding that PI motion was effectively denied when court "chose to give its attention" to other motions in the case). Here, the district court's delay of nearly two years in ruling on the PI motion, even as this case has progressed *past trial on the merits*, far exceeds any of these delays, and is an effective denial of the PI motion, regardless of the district court's attempt to characterize the denial as a "consolidation" order.

Indeed, a rational observer could conclude that, despite repeatedly recognizing the strength of Plaintiff's claims, the district court has unilaterally decided, without the opportunity for statutorily authorized appellate review, that she is not entitled to any preliminary relief. *But see* 28 U.S.C. § 1292(a) (orders "refusing" injunctions are appealable). But instead of issuing a ruling to this effect and allowing the appellate review process to take its ordinary course, the district court has chosen to "consolidate" the proceeding in order to avoid any appellate

review of a ruling adverse to Plaintiff. The Supreme Court has strongly repudiated this tactic of district courts' "manipulation" of proceedings "'to shield [their] orders from appellate review' by avoiding the label 'injunction,'" and for good reason. *Abbott v. Perez*, 138 S. Ct. 2305, 2320 (2018) (citation omitted). Otherwise, a district court that wished to rule against the plaintiff could "consolidate" the proceeding to avoid appellate review of a PI denial before trial. That approach is prohibited by Rule 65 and does violence to the rule of law.

Moreover, even if there could be any justification for the delay of a year and a half between the filing of Plaintiff's PI motion in July 2022 and the "consolidated" trial in December 2023, there is no justification for the district court's continued post-trial delay. The delay of two months, for example, before even requesting a final exhibit list and copies of exhibits that had already been provided prior to trial, raises an appearance to a reasonable person that despite Plaintiff's clear statement that she did not wish to delay a ruling to pursue settlement, the district court chose to delay in resolving the case anyway. That is especially so because the district court even told Plaintiff that "[y]ou're not now seeking a preliminary injunction" since the trial is over, which is a blatant misstatement of the law. *See* Fed. R. Civ. P. 65, Notes of Advisory Comm. on Rules, 1966 Amend.

The district court itself has recognized that Plaintiff is suffering irreparable harm each day that passes without a ruling on her PI motion. *See* ECF No. 267, at 12 ("[T]here is both a private interest here on the part of Ms. Strickland, as she wants to win this case, and . . . if we get to damages, her damages are going to be affected by the time that we take to adjudicate it."). It is "nose-on-the-face plain" that the loss of wages while a plaintiff "is contesting her ouster" constitutes "irreparable harm." *Rosario-Urdaz*, 350 F.3d at 222. "Where a plaintiff stands to suffer a substantial injury that cannot adequately be compensated by an end-of-case award of money damages, irreparable harm exists." *Id.*

The district court's extreme delay raises the perception to a reasonable observer that Plaintiff is being treated differently from other litigants. Put simply, it is difficult to imagine that a nearly two-year delay in ruling on a PI motion would be tolerated for any other litigant. *Cf. Texas*, 144 S. Ct. at 798–99 (Barrett, J., concurring) (in context of stay pending appeal, expressing concern at "the risk" that a court will use its "docket-management authority" to "avoid *Nken* for too long"). Such a delay of not days or months, but *years*, in deciding a request for preliminary relief—particularly if Plaintiff must pursue a further appeal after the district court rules on the merits—has eroded the possibility of meaningful relief after final judgment.

In short, the district court's extreme delay raises reasonable concerns that the district court has refused to rule on Plaintiff's PI motion because it has, in fact, *denied* the PI motion (which is the natural result of a refusal to rule for nearly two years) but also seeks to avoid any appellate review of the issue whether Plaintiff is likely to succeed on the merits of her claims. Indeed, in a filing in this Court in December 2022—nearly a year and a half ago—Plaintiff explained that the district court's statements in open court "presuppose[] that [the court] is *denying* the PI" but is "insulating [its] decision from interlocutory appeal":

> Tellingly, Judge Young stated, "what you want is a hearing and then you can appeal that and then we'll have the trial. That's not helpful." He continued, "of course you have the right" to a pretrial evidentiary hearing, but revealingly said, "if I did that, then you're on to the Court of Appeals with respect to that. I don't propose to do it twice." These statements unmistakably confess his intent to obstruct her right to appeal. Indeed, Judge Young's statement that Strickland will be "on to the Court of Appeals" after a pretrial hearing presupposes that he is *denying* the PI—the only reason she would appeal. By his own words, Judge Young prefers instead to prevent Strickland from going "on to the Court of Appeals" by masking his refusal of a PI as a "consolidation" and thus insulating his decision from interlocutory appeal. This is unlawful.

Add. 43–44 (citations omitted). The district court's continued delay in ruling on the PI motion provides similar indications of how the court may rule on the merits, while also unlawfully insulating its PI denial from appellate review. After all, if the court intended to *grant* relief in favor of Plaintiff in its final decision, one

19

would reasonably expect the court to "expedite" its decision as required by statutes, 28 U.S.C. § 1657(a), and rules, *see* Fed. R. Civ. P. 65, in order to prevent the irreparable harm the district court itself has recognized will be caused by any further delay. *See* ECF No. 171, at 36; ECF No. 267, at 12. That is particularly true because a PI "may be issued in the course of the consolidated proceedings." Fed. R. Civ. P. 65, Notes of Advisory Comm. on Rules, 1966 Amend.

## II. The District Court's Repeated Statements About The Strength Of Plaintiff's Case Show That She Is Entitled To A PI.

To obtain a preliminary injunction, "a plaintiff must establish that 1) they are likely to succeed on the merits; 2) they are likely to suffer irreparable harm absent preliminary relief; 3) the balance of the equities favors relief; and 4) the relief is in the public interest." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (en banc). "While plaintiffs seeking preliminary injunctions must demonstrate that they are likely to succeed on the merits, they need not show a certainty of success." *League of Women Voters*, 769 F.3d at 247 (internal quotation marks and citation omitted).

Here, the district court's own repeated statements demonstrate that Plaintiff has proven a likelihood of success on the merits of her claims of deliberate indifference to sexual harassment and a fundamentally unfair process for resolving her workplace discrimination complaints. The district court has recognized that the "[t]he factual findings" in the Chief Judge's "letter of reprimand" "constitute

20

an unimpeached public record pursuant to Fed. R. Evid. 803(8)(A)(iii)," as well as "an admission" under Fed. R. Evid. 801(d)(2)(D).  ECF No. 258, at 5–7; ECF No. 405, at 10–11.  The district court has also stated that "the e-mail in which the investigator . . . does draw the conclusion that [Defender] Martinez was biased . . . may well be powerful evidence" and "an admission by the Judiciary."  ECF No. 405, at 11.  The district court has made repeated statements that the facts are "generally undisputed," "[t]he underlying facts" supporting Plaintiff's discrimination claim "appear to be undisputed," and the "evidence of the investigator calling [the Defender] biased" and the "actual result of the investigation . . . would warrant a finding in favor of Ms. Strickland."  ECF No. 258, at 5–7; ECF No. 405, at 10–11; ECF No. 406, at 5.  Such "undisputed evidence" favoring the plaintiff's claims will justify a PI.  *League of Women Voters*, 769 F.3d at 246–47 (citation omitted); *Henry v. Greenville Airport Comm'n*, 284 F.2d 631, 633 (4th Cir. 1960) ("The District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right.").

The district court has also repeatedly recognized that Plaintiff is being subjected to irreparable harm due to the unavailability of back pay.  *See Mountain Valley Pipeline*, 915 F.3d at 218 ("unrecoverable" monetary losses qualify as "irreparable injury justifying preliminary relief"); *Rosario-Urdaz*, 350 F.3d at 222

(it is "nose-on-the-face plain" that the unavailability of back pay is "irreparable harm"). Indeed, the district court recognized in October 2022 that if "an immediate injunctive remedy is required, I won't hesitate to grant it," ECF No. 171, at 36, statements which it contradicted over a year later, in January 2024, when it stated, "[Y]ou're not now seeking a [PI]. You're seeking an injunction." ECF No. 398, at 39. Similarly, the district court recognized in June 2023, nearly a year after the PI motion was filed, that "if we get to damages, her damages are going to be affected by the time that we take to adjudicate it." ECF No. 267, at 12.

This irreparable harm can be quantified. Indeed, both parties' experts testified regarding estimates of the potential lost salary and benefits Plaintiff is accruing. *See* ECF No. 387, at 346–398, 467–474. That is because there is no position in indigent criminal defense, Plaintiff's calling, that provides comparable compensation to the one she held at the Federal Defender Office. The district court has stated that, based on Plaintiff's continued pursuit of this "important, socially beneficent work" in indigent criminal defense, she does not have a duty to mitigate these lost earnings by seeking higher-paying employment outside of her chosen field. ECF No. 398, at 17. Moreover, Defendants have not raised any affirmative defenses to Plaintiff's front pay claim. *See* ECF No. 387, at 470–71; *see also* ECF No. 210; ECF No. 259, at 99.

Irreparable harm is established not only because back pay is unavailable in this litigation—which would not be the case for any other employee challenging workplace discrimination under the nation's civil rights laws—but also because "the irreparable harm factor is satisfied" when "there is a likely constitutional violation." *Leaders of a Beautiful Struggle*, 2 F.4th 330 at 346.

The balance of equities likewise weighs in favor of issuing an injunction against Defendants' ongoing violations of Plaintiff's constitutional rights. *Id.* ("[A] state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction.").  And the public interest favors Plaintiff, because it "is well-established that the public interest favors protecting constitutional rights." *Id.*

## III. This Court Has Several Options To Remedy The District Court's Clear And Indisputable Violation Of Plaintiff's Rights.

While the irreparable harm caused by the district court's nearly two-year delay likely can never be remedied, this Court has several options to ensure that this unlawful delay does not continue. *Cf. Int'l Bhd. of Teamsters, etc. v. Ward*, 501 F.2d 456, 458 (4th Cir. 1974) (issuing "a writ of mandamus" ordering the district court to "hear and decide" the motion to dissolve a PI); *In re A & H Transp., Inc.*, 319 F.2d 69, 70 (4th Cir. 1963) (reviewing "an unappealable order" by treating the appeal notice "as a petition for a writ of mandamus").

*First,* this Court may construe the district court's continued refusal to grant

the PI, including its statement that Plaintiff is "not now seeking a PI," as an order

"refusing" a PI that is immediately appealable under Section 1292(a).  *See Cedar*

*Coal Co.*, 560 F.2d 1153 at 1161 (court's granting of "indefinite continuance"

fifteen days after PI motion was filed "amounted to the refusing of an injunction

and is appealable"); *In re Fort Worth*, 2024 U.S. App. LEXIS 8336, at *7 ("simply

sitting on a [PI] motion for too long can effectively deny it").  The Fourth Circuit

has explained that "[i]n determining whether or not an order is appealable under

§ 1292(a)(1), the courts do not look to the terminology of the order but to its

substantial effect."  *Lewis v. Bloomsburg Mills, Inc.*, 608 F.2d 971, 973 (4th Cir.

1979).  Because the "substantial effect" of the district court's nearly two-year delay

in ruling on Plaintiff's PI motion is a refusal of the PI, this Court may review the

PI refusal as an appealable order.

*Second*, the Court may order the district court to promptly rule on the merits

of the case.  The Fourth Circuit, in accordance with other courts, has recognized

that when a district court acts with "substantial delay" in addressing a case that is

entitled to statutory priority, mandamus relief is appropriate.  *In re Hicks*, 279 F.

App'x 236, 236 (4th Cir. 2008) (unpub. per curiam); *see also In re Hicks*, 118 F.

App'x 778, 778 (4th Cir. 2005); *Madden v. Myers*, 102 F.3d 74, 78 (3d Cir. 1996)

("Mandamus petitions provide an avenue for dealing with the situation . . . where

cases have been unduly delayed in the district court.").  An appellate court may issue a writ of mandamus based on a court's "undue delay," or, "without actually issuing a writ, may order a district court not to defer adjudicating a case." *Madden*, 102 F.3d at 79.

Lastly, the Court may remand with instructions for the district court to rule on Plaintiff's PI motion, if a final judgment continues to be delayed.  The district court's refusal to rule on the PI motion for nearly two years, without providing any analysis of the "findings and conclusions that support its action," supports this approach.  *Am. Humanist Ass'n v. Greenville Cty. Sch. Dist.*, 571 F. App'x 250, 252 (4th Cir. 2014) (quoting Fed. R. Civ. P. 52(a)(2)).

Given the district court's continued delay, failure to intervene would only further entrench the injustice of the judicial exceptionalism created by the judiciary's exemption from Title VII and other civil rights laws.  It has been five years since Plaintiff was constructively discharged due to a fundamentally unfair and discriminatory EDR process.  Plaintiff cannot obtain back pay, unlike any other employee covered by civil rights laws, and yet she also has been denied the basic procedural right to have her PI motion decided for nearly two years, as required by rules, statutes, and precedents.  This conduct is highly unjust and undermines the rule of law.

**CONCLUSION**

Plaintiff has demonstrated a clear and indisputable right to relief, that she has no other adequate remedy, and issuance of the writ would be appropriate.

This the 23rd day of April, 2024.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

I, Cooper Strickland, hereby certify that on this 23rd day of April, 2024, I electronically filed the foregoing with the Clerk of Court by using the appellate CM/ECF system.  Service on counsel for all parties in the district court will be accomplished by notice filed through the district court's CM/ECF system attaching a copy of this filing, as well as by email to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Dorothy Canevari at Dorothy.m.canevari@usdoj.gov

/s/ Cooper Strickland
Cooper Strickland

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because it contains less than 7,800 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a 14-point, proportionally spaced typeface.

/s/ Cooper Strickland
Cooper Strickland