## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

|  |  |  |
|---|---|---|
| In re CARYN DEVINS STRICKLAND, | ) ) ) | No. 2024-1353 |
| Petitioner. | ) ) ) | [No. 1:20-cv-00066] |

## MOTION TO CERTIFY QUESTION OF LAW
## TO THE U.S. SUPREME COURT

Plaintiff-Appellant Caryn Devins Strickland respectfully moves this Court to certify a question of law to the Supreme Court of the United States. The question for which Plaintiff seeks certification is:

> *Whether the district court's nearly two-year delay in ruling on Plaintiff's motion for a preliminary injunction complies with 28 U.S.C. § 1657(a) and Federal Rule of Civil Procedure 40, which provide that a district court "shall expedite consideration" of a motion for preliminary injunction?*

The district court has delayed in ruling on Plaintiff's PI motion for nearly two years, since July 2022. It has been six months since the close of evidence at trial in December 2023. Though the delay results in irreparable harm, the delay is not the only issue implicated by the district court's two-year failure to rule on Plaintiff's PI motion. Rather, it also implicates the fundamental fairness and integrity of this proceeding. In a case of exceptional importance—a suit against judiciary officials for constitutional violations that not only survived a motion to

1

dismiss but proceeded to trial—this issue implicates the Supreme Court's supervisory power over the administration of justice in the lower courts. *See* Sup. Ct. R. 10(a). Plaintiff requested Defendants' position on this motion, assuming their counsel represents the Respondent for this purpose. *See, e.g.*, Fourth Cir. Loc. R. 21(a). Defendants stated that they "will oppose the motion."

## BACKGROUND

This case marks the first time that a federal judiciary employee's claims of equal protection and due process violations by judiciary officials have survived a motion to dismiss and summary judgment, let alone proceeded to trial. *See Strickland v. United States*, 32 F.4th 311, 321 (4th Cir. 2022). In April 2022, this Court held that Plaintiff, a former assistant federal public defender, adequately alleged that judiciary officials were deliberately indifferent to sexual harassment and subjected her to a fundamentally unfair process for resolving her workplace discrimination claims. *Id.* Federal judiciary employees, including federal public defender employees, are not covered by the civil rights laws that protect other private and public sector employees. *See id.* at 349 n.9 ("[F]ederal judiciary employees have no remedies under the Civil Service Reform Act and are not covered by Title VII of the Civil Rights Act."). Thus, the outcome of this case, and the procedures used to decide it, will set a precedent that could affect the rights of the approximately *30,000 employees* in the judicial branch.

When this Court reversed the district court's dismissal of Plaintiff's complaint, it held that Plaintiff could only pursue prospective equitable relief, including front pay, and could not recover back pay—unlike other employees who are covered by civil rights laws and may recover back pay as a matter of course. *Id.* at 366, 369–371; *see* 42 U.S.C. § 2000e-5 (providing for "recovery of back pay"). Accordingly, the only way for Plaintiff to prevent her ongoing lost earnings while the case proceeded was through a motion for preliminary injunction ("PI"). It is "nose-on-the-face plain" that the unavailability of back pay is a "substantial injury" that constitutes "irreparable harm" for purposes of seeking a PI. *Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003). Moreover, it is established Fourth Circuit precedent that "unrecoverable" monetary losses are "irreparable injury justifying preliminary relief." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 218 (4th Cir. 2019).

Plaintiff moved for a PI in July 2022, *nearly two years ago*, following remand to the district court in June 2022. ECF No. 125; *see also* ECF No. 118. In September 2022, the district court "collapse[d]" Plaintiff's PI motion with the trial scheduled for a full year later, in September 2023. Entry Order Dated September 15, 2022. The district court stated that Plaintiff would be required either to proceed, "without discovery," to an expedited trial, or else forgo her PI motion before trial in September 2023. *In re Strickland*, 87 F.4th 257, 259 (4th Cir. 2023).

This unfair and coercive "Hobson's choice" has been held unlawful in the First Circuit, the Seventh Circuit, and the Fourth Circuit. *Nwaubani v. Grossman*, 806 F.3d 677, 680 n.7 (1st Cir. 2015); *Pughsley v. 3750 Lake Shore Drive Bldg.*, 463 F.2d 1055, 1057 (7th Cir. 1972); *Gellman v. Maryland*, 538 F.2d 603, 604, 606 (4th Cir. 1976). Indeed, the Fourth Circuit has specifically stated that holding a consolidated trial without "an opportunity to engage in any discovery . . . comes perilously close to a violation of due process." *Gellman*, 538 F.2d at 606.

While preserving her objection over the next year and a half—including through an appeal before this Court, which was dismissed; repeated requests for a pre-trial evidentiary hearing on the PI motion before the district court, which were denied; a petition for rehearing before this Court, which was denied; and a petition for mandamus in this Court, which was denied in a published opinion—Plaintiff proceeded through discovery and trial. *See* Doc. 2, Add. 1–132. Indeed, Defendants repeatedly represented to this Court that the district court "'desired'" a "pre-trial evidentiary hearing" on Plaintiff's PI motion, but the district court denied Plaintiff's motion for a prompt evidentiary hearing soon after her September 2022 appeal was dismissed. No. 22-1963, Doc. 37, at 1 (quoting ECF No. 150).

Following rescheduling, trial was ultimately held on December 11–19, 2023, more than *180 days ago*. Closing arguments were held on January 4, 2024. ECF Nos. 398–403.

During opening and closing arguments, Plaintiff continued to renew her PI motion.  Tr. 12/11/23, ECF No. 399, at 21; Tr. 1/4/24, ECF No. 398, at 39. During closing arguments, however, the district court erroneously "corrected" Plaintiff and stated, "*[y]ou're not now seeking a [PI].  You're seeking an injunction, and I will take that under advisement.*"  ECF No. 398, at 39 (emphasis added).  The district court's statements blatantly contradict Federal Rule of Civil Procedure 65, which provides that a PI "*may be issued in the course of the consolidated proceedings.*"  Fed. R. Civ. P. 65, Notes of Advisory Comm. on Rules, 1966 Amend. (emphasis added).  The court's statements also contradict its prior recognition that Plaintiff's "[front pay] damages are going to be affected by the time that we take to adjudicate" this case, Tr. 6/21/23, ECF No. 267, at 12, and "[i]f we go along in the hearing and I come to a belief at the end of the liability hearing that an immediate injunctive remedy is required, I won't hesitate to grant it," Tr. 10/31/2022, ECF No. 171, at 36.  As the continued post-trial delay—now nearly six months—indicates, the district court has disregarded its statutory duty to "expedite" consideration of Plaintiff's PI motion.  28 U.S.C. § 1657(a).

As a result of the court's delay, Plaintiff has lost nearly two years of ongoing lost earnings since July 2022.  Both parties' experts testified regarding estimates of the potential lost salary and benefits Plaintiff is accruing as she continues to pursue her calling in indigent criminal defense.  *See* Doc. 2, at 22.  She continues to lose

her earnings each day that passes, earnings to which any other employee not employed by the judicial branch would be entitled by law.

On April 23, 2024, Plaintiff filed a petition for a writ of mandamus in this Court. Doc. 2. She explained that "[w]hile the irreparable harm caused by the district court's continued delay cannot be undone, this Court must intervene to prevent any further injustice." Doc. 2, at 2.

In the interim, on May 2, 2024, more than six weeks ago, the district court issued an order stating that "[t]his Court will continue diligently to prepare full findings of fact and rulings of law," in apparent response to Plaintiff's mandamus petition. ECF No. 414, at 2; *but see* Fed. R. App. P. 21(b)(4) ("The trial-court judge may request permission to address the petition *but may not do so unless* invited or ordered to do so by the court of appeals." (emphasis added)).

The district court's order also seemingly faults *Plaintiff* for the court's delay, stating that she had "belatedly" raised a request to ensure that Exhibit BB was made part of the record for appeal. ECF No. 414, at 2. Exhibit BB contains evidence of other EDR complaints against the FDO, including allegations that the First Assistant used "sexual hand gestures" and the Defender referred to a female Assistant United States Attorney as a "fucking bitch." *See* Doc. 2, at 8 n.1 (noting that the district court had not ruled on Plaintiff's repeated requests to file this evidence). Plaintiff had been requesting to file this evidence *for more than a year*,

since April 2023.  *See* ECF No. 201.  Defendants had designated the evidence as confidential under the parties' protective order and opposed its unsealing.  *See id.* When Plaintiff's former counsel filed the evidence under seal temporarily so that the court could evaluate whether it should be filed publicly, *see* WDNC LCvR 6.1(d) (allowing filing of an "unredacted copy" under seal pending decision on sealing), the district court suspended the district's local rules regarding sealing and stated that all sealed documents "are to be returned to sender," ECF No. 203, at 2.

Thereafter, the court failed to rule on a series of motions from *both* parties requesting sealing, thus preventing the EDR materials from being filed.  *See, e.g.,* ECF Nos. 244, 247, 293, 331, 345, 386, 410.  In October 2023, Plaintiff even filed a motion contending that the district court had violated her due process rights by failing to review this evidence, but the district court denied her motion while *still* failing to review the evidence.  *See* ECF No. 292-1, at 1; Tr. 11/16/23, ECF No. 405, at 8–10.  Because the district court had not allowed Plaintiff to file the EDR materials under seal over many months, including in her proposed findings and conclusions of law, Plaintiff moved to challenge Defendants' confidentiality designation over the materials post-trial in an attempt to file the materials in the record, after having moved to clarify whether the materials should be filed publicly or under seal without success.  *See* ECF Nos. 386, 410, 412.  On May 2, 2024, the district court finally allowed Plaintiff to file her proposed findings and conclusions

of law containing the EDR materials under seal (but not any of her other previous filings, including her summary judgment motion and filings related to motions *in limine*, which the court had ruled on without even reviewing the EDR materials). *See* ECF No. 414. Regardless, Plaintiff plainly is not responsible for the district court's continuing delay in releasing its decision post-trial.

## ARGUMENT

**I.    The District Court's Nearly Two-Year Delay In Deciding Plaintiff's PI Motion Is A Question Warranting Certiorari That Could Evade Review Absent Certification.**

Whether the district court's nearly two-year delay in deciding Plaintiff's PI motion complies with 28 U.S.C. § 1657 is a discrete legal question appropriate for certification to the U.S. Supreme Court. Under 28 U.S.C. § 1254(2), this Court may certify a question of law to the Supreme Court. Supreme Court Rule 19 sets forth a procedure for certifying a question and states that "[o]nly questions or propositions of law may be certified, and they shall be stated separately and with precision." Sup. Ct. R. 19. Whether to grant a party's motion for certification "rests exclusively in the discretion" of this Court. *United States v. Seale*, 577 F.3d 566, 571 (5th Cir. 2009) (citation omitted).

### A.    The District Court's Extreme Departure from Established Practice Implicates the Supreme Court's Supervisory Power.

Supreme Court review is appropriate when a court "has so far departed from the accepted and usual course of judicial proceedings, or sanctioned such a

departure by a lower court, as to call for an exercise of this Court's supervisory power." Sup. Ct. R. 10(a). The district court's "extreme departures from judicial practice undermine public trust in the integrity of this proceeding." Doc. 2, at Add. 33. As stated by Plaintiff's former lead counsel, "[i]f left unaddressed, these departures 'from the accepted and usual course of judicial proceedings' may warrant Supreme Court review." *Id.* (quoting Sup. Ct. R. 10(a)).

The Supreme Court "has a significant interest in supervising the administration of the judicial system." *Hollingsworth v. Perry*, 558 U.S. 183, 196, (2010). "By insisting that courts comply with the law, parties vindicate not only the rights they assert but also the law's own insistence on neutrality and fidelity to principle." *Id.* As Plaintiff's former lead counsel explained:

> This Court's prior decision was the first time that a lawsuit challenging the use of discriminatory and unfair procedures for addressing workplace misconduct in the federal judiciary has survived a motion to dismiss. The procedures used to resolve this case will set an example for future cases, and it is imperative that the procedures be transparent, fair, and lawful, so as to avoid repetition of the unfairness of the judiciary's EDR procedures. Strickland should not have to wait months or years to correct the district court's unlawful conduct, which she has a statutory right to appeal.

Doc. 2, at Add. 46–47 (citation omitted).

The district court's delay in resolving Plaintiff's PI motion is an extreme outlier. According to data from the United States Courts, *only* 71 bench trials were

pending for more than six months in *all* 94 federal districts as of September 30, 2023, the last published reporting deadline. *See* United States Courts, September 2023 Civil Justice Reform Act Report (Sept. 30, 2023), *available at* https://www.uscourts.gov/statistics-reports/september-2023-civil-justice-reform-act. That data includes *all* bench trials, not just those consolidated with a PI motion. *See id.* In fact, the report identifies *only* one PI motion subject to delay because of a scheduled trial—like this case, except the delay in this case was not reported. *See id.* Thus, the district court's six-month delay since trial is lengthy even when compared to bench trials not required to be expedited by statute.

Moreover, *only* 55 motions—out of a total of 9,545 pending motions—for a PI were reported as pending for more than six months, which further shows how extraordinary it is for a PI motion to be pending for *nearly two years*. *See id.*; *cf.* Fed. R. Civ. P. 65(a)(2), Notes of Advisory Comm. on Rules, 1966 amend. ("The fact that the proceedings have been consolidated *should cause no delay in the disposition of the application for the [PI]*, . . . [in fact,] to consolidate the proceedings *will tend to expedite the final disposition of the action*." (emphasis added)). As Plaintiff's former lead counsel explained, this delay is part of a series of unexplained "irregularities [that] undermine the integrity of the proceeding and raise a reasonable perception that Strickland is unfairly being treated differently from other litigants." Doc. 2, at Add. 47.

**B.      The District Court's Procedure is in Direct Conflict with Other Circuits (and the Fourth Circuit itself).**

Supreme Court review is also warranted when a court's decision is "in conflict with the decision of another United States court of appeals on the same important matter." Sup. Ct. R. 10(a). Here, the district court's consolidation procedure—imposing a "Hobson's choice" of requiring Plaintiff to forgo her procedural rights, including discovery, or else forgo a decision on her PI motion—directly conflicts with the practice in other circuits.

In fact, this district court judge previously has been admonished by his home circuit for engaging in precisely this "unfair[]" and "inappropriate[]" conduct. *Nwaubani v. Grossman*, 806 F.3d 677, 680 n.7 (1st Cir. 2015). The First Circuit explained: "[W]e are troubled that the district court, in consolidating the [PI] hearing with a trial on the merits may have unfairly put [the plaintiff] (over his objection) in a position where he was forced to forego a ruling on his interlocutory request for injunctive relief in order to conduct adequate discovery to prepare for a trial on the merits." *Id.* The Court described this misuse of Rule 65(a) as a "Hobson's choice." *Id.* Ultimately, the First Circuit dismissed the plaintiff's interlocutory appeal because he could obtain other remedies, including back pay and money damages, after a final judgment, and so he could not show that the district court's order could only be effectively challenged through an interlocutory

appeal. *Id.* at 681. In contrast, Plaintiff cannot obtain back pay or money damages—she can *only* obtain prospective equitable relief.

The Seventh Circuit and the Fourth Circuit have held similarly to the First Circuit. The Seventh Circuit, in an opinion by then-Judge John Paul Stevens, has stated that while consolidation "may serve the interests of justice" in an appropriate case, "a litigant applying for a [PI] should seldom be required either to forego discovery in order to seek emergency relief, or to forego a prompt application for an injunction in order to prepare adequately for trial." *Pughsley*, 463 F.2d at 1057. Similarly, the Fourth Circuit has stated that ordering a consolidated trial without "an opportunity to engage in any discovery . . . comes perilously close to a violation of due process." *Gellman*, 538 F.2d at 606. At a minimum, controlling Fourth Circuit precedent should have definitively settled that the district court's aberrational procedure was unlawful.

The trial court, however, continues to implement the same procedure that the First Circuit condemned as an inappropriate and unfair "Hobson's choice," the Seventh Circuit described as contrary to "the interests of justice," and the Fourth Circuit described as "perilously close to a violation of due process." *See In re Strickland*, 87 F.4th at 259. As recognized by this Court, the district court had "advised Strickland that she had the choice of proceeding, without discovery, to a consolidated trial/hearing within a relatively short period of time or, alternatively,

12

proceeding with discovery and then having a consolidated trial/hearing in September 2023." *Id.* In other circuits, such a "choice" is not considered a "choice" at all. It is a "Hobson's choice," and a violation of the plaintiff's due process rights. *Nwaubani*, 806 F.3d at 680 n.7.

Likewise, the district court's extreme delay in deciding the PI motion directly conflicts with other circuits, which recognize that such delay is an effective denial of the motion. *In re Fort Worth Chamber of Commerce*, No. 24-10266, 2024 U.S. App. LEXIS 10849, at *8 (5th Cir. Apr. 5, 2024) ("[S]imply sitting on a [PI] motion for too long can effectively deny it."); *Cedar Coal Co. v. United Mine Workers*, 560 F.2d 1153, 1161–62 (4th Cir. 1977); *Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1449–50 (9th Cir. 1992); *Rolo v. Gen. Dev. Corp.*, 949 F.2d 695, 703 (3d Cir. 1991); *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962). The Fourth Circuit itself has held that a district court's granting of an "indefinite continuance" after a PI motion was filed "amounted to the refusing of an injunction and is appealable." *Cedar Coal Co.*, 560 F.2d at 1161. That is precisely what the district court did when it consolidated the PI motion with a trial previously scheduled for a year later, in September 2023 (ultimately delayed until December 2023). In *Cedar Coal*, the Fourth Circuit held that this type of order was appealable because if appeal were not allowed, "it would permit a plain denial of even the bare consideration of whether to consider injunctive relief to go

unaccounted for by virtue of an indefinite continuance." *Id.* at 1162. What the Fourth Circuit warned about—an "indefinite continuance"—is exactly what has happened in the nearly two years since Plaintiff's PI motion was filed.

This Court's decisions countenancing the district court's aberrational procedure conflict with Fourth Circuit precedent and create a circuit split on an issue of national importance: the administration of PI motions. Due to the recusal of all Fourth Circuit's judges—because of their conflict of interest, not Plaintiff's—there is no possibility of *en banc* review to ensure the uniform application of law within this Circuit to this proceeding. *See* Doc. 2, at Add. 51–52 (*United States v. Roof*, Doc. 177, No. 17-3 (4th Cir. 2021) (Gregory, C.J.)). While "[i]t is primarily the task of a Court of Appeals to reconcile its internal difficulties," that is not possible here because *en banc* review is unavailable. *United States v. Seale*, 558 U.S. 985, 986 (2009) (citation omitted).

The Court's decisions threaten to undermine established jurisprudence in this area. The Supreme Court has held that district courts' "manipulation" of proceedings "'to shield [their] orders from appellate review' by avoiding the label 'injunction,'" as the district court did here, is unlawful. *Abbott v. Perez*, 585 U.S. 579, 595 (2018) (citation omitted). Plaintiff's former lead counsel explained the "absurd and outrageous results" of the district court's aberrational procedure:

> Imagine if a religious minority seeking an immediate injunction against discriminatory policies, or a

> transgender student seeking to use the restroom
> matching his gender identity, were told that they would
> have to wait for a decision on the injunction until trial
> because their appeal of an unfavorable PI ruling would
> not be "helpful." Imagine if they were told there is no
> need for pretrial discovery because "subpoenas work."
> That would be unlawful. Tolerating Judge Young's
> unlawful conduct risks setting a dangerous precedent by
> empowering district court judges to undermine the
> rights of parties seeking preliminary injunctive relief.

Doc. 2, at Add. 45–46 (citations omitted). Put simply, the district court's

"manipulation" of proceedings to avoid appellate review of an adverse PI ruling

sets a dangerous precedent. *Abbott*, 585 U.S. at 595. Such precedent would allow

any district court hostile to a plaintiff's PI motion to deny the motion, without

statutorily authorized appellate review, in the guise of a "consolidation" order

under Rule 65. Whether this procedure is allowed under statutes and rules is an

"important matter" that warrants Supreme Court review. Sup. Ct. R. 10(a).

### C. The Compelling Facts of this Case Highlight the Injustice of the District Court's Refusal to Rule on Plaintiff's PI Motion.

The compelling facts of this case highlight the injustice of the district

court's continued delay. For example, the Fourth Circuit's Chief Judge found that

First Assistant J.P. Davis, Plaintiff's supervisor, "proposed an unsavory quid pro

quo," and accepted the investigation's recommendation "that disciplinary action

be taken" against both him and Federal Defender Anthony Martinez. Doc. 2, Add.

127, 129. In its summary judgment ruling and later, the district court described

these findings as "unimpeached" and an "admission" by Defendants. ECF No. 258, at 6–7; Tr. 11/16/23, ECF No. 406, at 10–11. The court also stated that these exhibits are "undisputed," *id.*, and "would warrant a finding of liability on gender-based discrimination," Tr. 12/11/2023, ECF No. 406, at 5.

Discovery also revealed other egregious facts, including that the First Assistant stated that Plaintiff needed to "***get slapped***" and "***smacked a bunch***" to a fellow supervisor. ECF No. 387, ¶ 28e. At trial, the First Assistant admitted he made these statements, but described them as merely "colloquial," which is further evidence of his gender bias apparently justified by a perceived societal acceptance of threatening violence against women. Tr. 12/18/23, ECF No. 402, at 95–97. The Defender also used "crude language" about women, including by allegedly referring to a female Assistant United States Attorney as a "***fucking bitch.***" ECF No. 249, at 22; Tr. 12/14/23, ECF No. 401, at 159 (Plaintiff's proffer).[1]

During closing arguments, the district court *repeatedly* recognized that Defender Martinez "seems quite hostile" to Plaintiff, but it opined that his hostility was based on "retaliation" rather than discrimination based on her gender. Tr. 1/4/24, ECF No. 398, at 11, 21. In context, this contention seems to resurrect the

---

[1] Plaintiff's proffer regarding the other EDR complaints, which was unavailable on the docket until the district court's May 2, 2024 ruling, is now available at ECF No. 416 under seal. *See, e.g.*, ECF No. 416, ¶¶ 22, 23d, 26d, 29e, 85b, 102h, 135a, 187d, 234h, 312f; *see also id.* at 422–23, 435.

same rationale based on *Wilcox v. Lyons*, 970 F.3d 452 (4th Cir. 2020), that this Court rejected in reversing the district court's dismissal order. *See Strickland*, 32 F.4th at 358 (rejecting district court's conclusion that Plaintiff had "alleged a pure retaliation claim"). If "retaliation," but not "discrimination," is the potential basis for district court's final judgment, Plaintiff should not have had to wait two years to seek review of a ruling reiterating the same dismissal arguments, in the guise of a factfinder, that this Court already rejected.

In discussing the purported lack of discriminatory intent, the district court also cited with apparent approval Defender Martinez's testimony criticizing Plaintiff as "not a team player." *See* ECF No. 394, at 1. This rationale "echoe[s] the all too familiar complaints about assertive, strong women who speak up for themselves: 'difficult,' 'negative attitude, 'not a team player,' 'problematic.'" *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1072 (9th Cir. 2003). "The district courts must reject such sexual stereotypes and learn to identify the oft employed rhetoric that could reveal illegitimate motives." *Id.*

In any event, the Defender's subjective and belated assertion at trial that Plaintiff was "not a team player," which is contradicted by his own prior statements in the record praising Plaintiff's work performance and ability to work with others, *see* ECF No. 394, do not justify his sex-discriminatory conduct in (1) comparing the First Assistant's supervisory relationship with Plaintiff to a

17

"marriage" and ordering her to "compromise," as he made her "confront the person she accused of sexually harassing her"; (2) "call[ing] out" Plaintiff for "contacting the AO to receive guidance on her civil rights as a federal employee"; (3) telling her words to the effect that "at least you weren't touched," which the investigation found were "callous," "minimizing," and "insensitive," and (4) stating "he was being blamed for something that was not his fault." Doc. 2, at 1; *id.* at Add. 130–31. Those are acts of discrimination based on Plaintiff's gender, and, at a minimum, they constitute deliberate indifference to sexual harassment.

### D. Equitable Factors Favor Certification.

Certification is appropriate now because this case has not been decided. *See In re Blanc*, No. 20-11701-C, 2021 U.S. App. LEXIS 29458, at *6 (11th Cir. Sep. 29, 2021) ("Questions should not be certified after the case has been decided.") (citation omitted)). Given the ongoing irreparable harm, waiting any longer to seek review would defeat the purpose of a PI motion. *In re Fort Worth Chamber of Commerce*, 2024 U.S. App. LEXIS 10849, at *8 (a PI motion "must be granted *promptly* to be effective" (emphasis in original) (citation omitted)).

Moreover, given Plaintiff's limited resources, pursuing review in the Supreme Court herself would be a substantial hardship. Plaintiff does not qualify for *in forma pauperis* status, but that does not mean she can afford thousands of dollars to pursue further review in the Supreme Court. *See* Sup. Ct. R. 20(2)

(requiring "40 copies of petition" and "docket fee" for petition for extraordinary relief). Plaintiff has obtained an estimate that filing a petition, with necessary appendix material, in the Supreme Court could cost as much as $10,000. *See* Decl. Plaintiff's Counsel. Plaintiff has already spent approximately $1,600 in filing fees in this Court pursuing a ruling on her PI motion.

If this Court questions whether Plaintiff could afford to pay thousands of dollars in costs as an attorney practicing in indigent criminal defense, Plaintiff's lost earnings information was introduced along with her front pay expert's deposition testimony at trial. *See* ECF No. 350; Tr. 12/13/2024, ECF No. 400, at 111. Those lost earnings were incurred due to Defendants' discriminatory conduct, resulting in Plaintiff's constructive discharge from her chosen career as a federal public defender. Defendants should not benefit from their misconduct by pricing Plaintiff out of court. *See generally* ECF No. 362.

Compounding this hardship, the district court allowed Plaintiff's entire legal team, except for her spouse, to withdraw from representing her just *nine days* before the summary judgment deadline, approximately three months before the scheduled trial, and less than four weeks after the court's order authorizing the deposition of the Fourth Circuit's Chief Judge. Entry Order Dated May 23, 2023. As a result, in addition to her and her spouse having to depose the Chief Judge by themselves on little notice, Plaintiff lost access to a litigation grant her former lead

counsel had obtained that would have allowed her to apply for expenses, like court costs. *See* ECF No. 215, at 1 (describing the "severe prejudice" that would result from counsels' withdrawal, including reference to litigation grant).

Neither the parties' filings nor the district court's minute entry order provide good cause for allowing Plaintiff's legal team to withdraw at that late stage, without her written consent, in a case of such extraordinary importance. *See* ECF Nos. 207, 214, 215, 221. The district court's grant of the motion, without ensuring that good cause existed, was in clear violation of applicable rules and precedents. *See, e.g., Wallace v. City of Hampton*, No. 2:15-cv-126, 2017 U.S. Dist. LEXIS 228032, at *14 (E.D. Va. July 20, 2017) ("[I]t is incumbent on the court to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel, and that the withdrawal of counsel is for good cause.'" (citation omitted)); WDNC Local Rule 83.1(f) ("[a]bsent the client's consent," motion to withdraw must show "good cause"); *Champboat Series, LLC v. In2focus Films, Inc.*, No. 3:09-CV-183-RJC-DCK, 2009 U.S. Dist. LEXIS 143071, at *3 (W.D.N.C. Nov. 16, 2009) (an "unspecified 'conflict'" is insufficient to show good cause); *Spann v. N.C. Dep't of Pub. Safety*, No. 1:17 cv 104, 2017 U.S. Dist. LEXIS 200732, at *5 (W.D.N.C. Dec. 6, 2017) ("Plaintiff's Counsel's Motion to Withdraw is five sentences. It contains no showing of good cause as to why she should be allowed to withdraw."). Beyond depriving Plaintiff of her litigation

funding and requiring her to proceed *pro se*, with her spouse—neither of whom had *ever* litigated a trial to verdict before this case—the court's actions taint the integrity of this proceeding. *See, e.g.*, ECF No. 262 at 15 (Plaintiff's statements to district court at the July 27, 2023 final pretrial conference that she and her spouse had "never done a trial, jury-waived or otherwise").

Meanwhile, Defendants—who are federal judiciary officials, represented by at least four attorneys from the Department of Justice—have spent exorbitant taxpayer funds defending this case. Discovery revealed that Defendants have spent ***approximately $100,000 in expert fees, alone,*** including on an expert who did not even testify at trial. ECF No. 362, at 7; ECF No. 400, at 76, 111. The vast resource disparity between the parties—incurred, in part, due to the district court's refusal to rule on Plaintiff's PI motion seeking her lost earnings for nearly two years—should not be the reason why an issue that deserves review is evaded.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that this Court certify to the U.S. Supreme Court the question whether the district court's nearly two-year delay in ruling on Plaintiff's PI motion complies with 28 U.S.C. § 1657(a).

This the 18th day of June, 2024.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

I, Cooper Strickland, hereby certify that on this 18th day of June, 2024, I electronically filed the foregoing with the Clerk of Court by using the appellate CM/ECF system. Service on counsel for all parties in the district court will be accomplished by notice filed through the district court's CM/ECF system attaching a copy of this filing, as well as by email to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Dorothy Canevari at Dorothy.m.canevari@usdoj.gov

/s/ Cooper Strickland
Cooper Strickland

**CERTIFICATE OF COMPLIANCE**

I certify that this motion complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) because it contains less than 5,200 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This motion complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a 14-point, proportionally spaced typeface.

/s/ Cooper Strickland
Cooper Strickland

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

|                               |   |                      |
|-------------------------------|---|----------------------|
| In re CARYN DEVINS            | ) |                      |
| STRICKLAND,                   | ) | No. 2024-1353        |
| Petitioner.                   | ) |                      |
|                               | ) | [No. 1:20-cv-00066]  |
| _____ | ) |                      |

## DECLARATION OF PLAINTIFF'S COUNSEL

I, Cooper Strickland, hereby make this declaration in accordance with 28

U.S.C. § 1746. I am aware that this declaration will be filed in the United States

Court of Appeals for the Fourth Circuit, and that this declaration is the legal

equivalent of a statement under oath. I make the following assertions based on my

own personal knowledge:

1.     I am counsel for the plaintiff in this matter and am over the age of 18

years at the time I executed this declaration.

2.      In April 2024, I obtained a printing estimate from a professional

appellate printer in Richmond, VA for filing a petition for a writ of mandamus in

the U.S. Supreme Court.

3.     According to the fee schedule I was provided, the base fee for a

petition is $150.00 and the fee per original page of the document and appendix is

$35.00. If I were to include the necessary appendix materials, the cost could be as

1

much as $10,500.  Even if I included only minimal appendix materials, the cost would likely still be thousands of dollars.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that to the best of my own personal knowledge, the foregoing assertions are true and correct.

Executed this the 18th day of June, 2024.

*/s/ Cooper Strickland*
Cooper Strickland

**CERTIFICATE OF SERVICE**

I, Cooper Strickland, hereby certify that on this 18th day of June, 2024, I electronically filed the foregoing with the Clerk of Court by using the appellate CM/ECF system. Service on counsel for all parties in the district court will be accomplished by notice filed through the district court's CM/ECF system attaching a copy of this filing, as well as by email to the following:

Joshua M. Kolsky at Joshua.Kolsky@usdoj.gov

Madeline M. McMahon at madeline.m.mcmahon@usdoj.gov

Dorothy Canevari at Dorothy.m.canevari@usdoj.gov

/s/ Cooper Strickland
Cooper Strickland
