IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

|                          |   |                    |
|--------------------------|---|--------------------|
| In re CARYN DEVINS STRICKLAND, Petitioner. | ) ) ) ) ) ) ) | No. 2024-1353  [No. 1:20-cv-00066] |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION TO CERTIFY QUESTION OF LAW TO THE U.S. SUPREME COURT**

Plaintiff's motion concerns the district court's duty to enforce the statutes, rules, and precedents that apply to all judicial proceedings. The district court's failure to do so undermines the fairness and integrity of this proceeding, clashes with precedent from other circuits, and "has so far departed from the accepted and usual course of judicial proceedings . . . as to call for an exercise of th[e] [Supreme] Court's supervisory power." Sup. Ct. R. 10(a).

Defendants characterize the district court's violation of statutes and rules as "docket management decisions" and argue that certification is a "dead letter." *See* Doc. 12, at 2, 6. To be sure, certification of a question to the U.S. Supreme Court *is* extraordinary. But so are the circumstances of this case. The stakes here, which Defendants dismiss, are whether officials of the federal judiciary will live by the same rules they enforce on others and thereby uphold the rule of law.

1

## I. Defendants' Response Trivializes Important Issues.

Defendants contend that the district court's two-year delay in resolving Plaintiff's PI motion concerns her subjective desire to receive a decision "on her preferred timeline," rather than the enforcement of statutes, rules, and standards of basic fairness. Doc. 12, at 6. This argument echoes their assertion that, when Plaintiff alleged that she had not received basic fairness or prompt and effective action in her EDR proceeding, her complaint was that she had not received "updates" on her "preferred schedule." ECF No. 78, at 17; *see also* ECF No. 54, at 21 (characterizing Plaintiff's allegations as being that the judiciary's policies did "not match precisely with Plaintiff's personal preferences").

This Court rejected Defendants' trivialization of their alleged violation of Plaintiff's constitutional rights when it allowed her claims of fundamental unfairness and deliberate indifference in the EDR process to proceed in federal court. *See Strickland v. United States*, 32 F.4th 311, 321 (4th Cir. 2022). Likewise, this Court should reject Defendants' attempt to trivialize the concerns raised by the district court's two-year failure to rule on Plaintiff's PI motion. These concerns pertain not only to the failure to comply with statutes, rules, and precedents, *see, e.g.*, 28 U.S.C. § 1657(a), Fed. R. Civ. 40, but also to the basic fairness of this proceeding and apparent disparate treatment of Plaintiff as compared to other litigants, *see* Doc. 10, at 9–10 (discussing statistics from United

States Courts showing that district court's delay in ruling on PI motion is an extreme outlier). Indeed, it has been *more than two months* since the district court stated that it "will continue diligently to prepare full findings of fact and rulings of law" on May 2, 2024. ECF No. 414, at 2. Given the ongoing delay, the district court's use of words like "diligent" and "prompt" cease to have meaning, with Defendants as the direct beneficiaries. As stated by Plaintiff's former lead counsel, "[a]llowing [Defendants] to benefit from this runaround would seriously undermine the fairness and integrity of this proceeding." Doc. 2, at Add. 47.

Similarly, Defendants' references to "*purported* 'front pay,'" even using scare quotes around the term "front pay" as if to denote sarcasm or contempt, are troubling. Doc. 12, at 1 (emphasis added); *see also* Case No. 23-2132, Doc. 17, at 3 (similarly referencing "purported 'front pay'"). This Court held that "front pay in lieu of reinstatement" is available as an equitable remedy. *Strickland*, 32 F.4th at 366. The Court's ruling accords with precedent holding that front pay is available when reinstatement is not "a viable option" due, for example, to "continuing hostility . . . between the parties." *Pollard v. E. I. du Pont de Nemours & Co.*, 532 U.S. 843, 850 (2001) (citation omitted); *see also Hunter v. Town of Mocksville*, 897 F.3d 538, 562 (4th Cir. 2018) (holding that, although reinstatement of a wrongfully discharged employee is preferable, "in appropriate circumstances a district court may award front pay in lieu of reinstatement").

3

The availability of front pay is binding on the district court under the mandate rule. *See Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007) ("The principle that a district court may not violate the mandate of a circuit court of appeals and may not alter the law of the case so established is basic." (citation omitted)). Defendants' disdainful language regarding "purported 'front pay'"—on behalf of the district court as Respondent—signals disrespect for this Court's precedents.

Defendants' only substantive argument that certification is inappropriate is that the question presented is allegedly a "mixed question of law and fact." *See* Doc. 12, at 6. But the obligations imposed by 28 U.S.C. § 1657(a) to "expedite" a ruling on preliminary relief, and by Federal Rule Civil Procedure 40 to "give priority to actions entitled to priority by a federal statute," present questions of statutory interpretation, which are questions of law. The Supreme Court has held that "questions of law" "can reasonably encompass questions about whether settled facts satisfy a legal standard." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227–28 (2020); *see Mitchell v. Forsyth*, 472 U. S. 511, 528, n. 9 (1985) ("[T]he appealable issue is a purely legal one: whether the facts alleged . . . support a claim of violation of clearly established law"); *cf. Nelson v. Montgomery Ward & Co.*, 312 U.S. 373, 376 (1941) ("The effect of admitted facts is a question of law").

The district court's delay of two years, and six months since trial, is a settled fact. Whether the court's delay in ruling on the PI motion satisfies statutory

4

standards is a question of law. If the district court *had* ruled on the PI motion, *that* ruling likely would have involved questions of fact subject to this Court's review. By contrast, *Pflueger v. Sherman*, cited by Defendants, involved a "variety of preliminary questions" unsuitable for certification. 293 U.S. 55, 58 (1934).

## II. Defendants Fail to Justify the District Court's Ongoing Delay.

Defendants' response fails to justify the district court's delay and raises more questions than it answers. For example, Defendants assert that at trial, "Strickland declined to call any witnesses to testify in support of her claims or to provide foundation for the documents on which she asserted the case should be resolved." Doc. 12, at 4. That assertion is untrue.

In fact, Plaintiff presented deposition testimony from nine witnesses, including seven fact witnesses and two experts: a workplace investigations expert, who concluded that Defendants' response to Plaintiff's complaint "fell below well-accepted HR practices," *see* ECF 339-1, 2, and a front pay expert. *See* ECF No. 364, at 4–5. Defendants did not object to Plaintiff's use of deposition testimony for her fact witnesses. *Id.*; ECF No. 354-3, at 2 (Defendants "conditionally object to Plaintiff's designation of the deposition testimony" only if Plaintiff "calls any of these witnesses for her case in chief"). The district court admitted the front pay expert's deposition, and a ruling on her workplace investigations expert is pending. *See* ECF No. 400, at 111. These expert depositions were taken by Defendants after

5

Plaintiff's legal team withdrew, resulting in the loss of her litigation grant and her inability to depose her own experts or defendants' experts. *See* ECF No. 362.

Defendants' assertion that Plaintiff should have examined these witnesses live is not just legally unsupported, but unreasonable. During the trial, Plaintiff, without the assistance of a legal team, cross-examined all of Defendants' seven witnesses **by herself**. ECF Nos. 400, 401, 402, 403. Defendants' witnesses included not only high-level judiciary officials, such as the Circuit Executive and the former Judicial Integrity Officer, but also the First Assistant who harassed her (who is still employed by the FDO) and the former Federal Defender who retaliated and discriminated against her. Plaintiff was forced to personally confront these individuals as both trial counsel and the victim of their misconduct. *See* ECF No. 398, at 11 (district court's statements during closing argument recognizing that the former Defender "seems quite hostile" to Plaintiff).

In addition to cross-examining seven judiciary officials by herself, when Plaintiff had never previously litigated a trial to verdict, Plaintiff was questioned as a witness by both Defendants *and* the district court. ECF No. 399, at 37–128; ECF No. 400, at 5–19. **Plaintiff's spouse**, who also had no prior trial experience, was forced to defend her examinations because she had no other counsel. *See id.*

6

By contrast, Defendants' seven witnesses were divided among *four* Department of Justice trial attorneys. No Department of Justice attorney was required to conduct more than *two* witness direct examinations at trial.

Defendants' assertion about exhibits is also unfounded. Defendants did not timely object to Plaintiff's exhibits as required by Federal Rule of Civil Procedure 26. *See, e.g.*, ECF Nos. 355, 361, 364, 376, 378, 384, 386. Further, most of Plaintiff's exhibits came from Defendants, so there would be no basis to object on foundational grounds. *Id.* The district court admitted nearly all of her exhibits (with exceptions, including the "Me Too" EDR complaints). *See* ECF No. 404.

Despite facing extraordinary challenges, including the unforeseen withdrawal of her legal team (for which the district court failed to hold a hearing or find good cause), Plaintiff presented a comprehensive case-in-chief in compliance with the rules of evidence and civil procedure, including detailed proposed findings. *See* ECF No. 415. Regardless, the basic facts are straightforward and can be understood based on a small handful of uncontested exhibits. *See* Doc. 2, at 1–2, 9–13 (discussing Chief Judge's "letter of reprimand" and Investigator's "bias" email). There is simply no justification for the district court's ongoing delay.

### III. Plaintiff Is Not Responsible For The District Court's Ongoing Delay.

Defendants and the district court have both alleged that delays in this proceeding are *Plaintiff's* fault. *See* Doc. 10, at 3 (Defendants' assertion that

7

Plaintiff "chose" to proceed with discovery and "to forego th[e] trial date" for mediation); ECF No. 414, at 2 (district court's allegation that Plaintiff "belatedly" raised issues regarding the filing of other EDR complaints). But Plaintiff is not responsible for the district court's "Hobson's choice" consolidation order, to which she vigorously objected, or its continued delay in ruling *six months* after trial.

For example, Defendants reiterate that Plaintiff "knowingly decided to forego th[e] trial date in order to engage in mediation with the defendants." Doc. 12, at 3 (quoting *In re Strickland*, 87 F.4th 257, 261 (4th Cir. 2023)). To be sure, Plaintiff *did* seek to resolve this case through mediation in August 2023, almost a full year ago now. But Plaintiff also had repeatedly sought unsuccessfully to engage in mediation *since filing this lawsuit in 2020.*

In 2020, *four years ago*, Plaintiff's counsel attempted to initiate mediation with Defendants, as required by this district's local rules. WDNC LCvR 16.2(a) ("All parties to a civil action must attend a mediated settlement conference, unless otherwise ordered by the Court."). The parties had agreed to mediation in the Certificate of Initial Attorneys' Conference. *See* ECF No. 34, at 6 ("Pursuant to Local 16.3, the parties agree that settlement may be enhanced by use of informal settlement discussions and a mediated settlement conference."). Mediation, however, did not occur. Tellingly, Defendants' counsel responded to Plaintiff's request, in part, that "requir[ing] Chief Judge Gregory, Mr. Ishida, Ms. Walter, and

8

the Federal Defender, in particular, to suspend their schedules for a full day—if not days—would involve them taking their time away from their official duties and would impose a burden on the judicial system not only at the local level, but at the Fourth Circuit and national levels." Case No. 21-1346, Doc. No. 90-2, at 4.

In August 2022, following this Court's reversal of the district court's dismissal order, Plaintiff again proposed that "settlement may be enhanced by use of informal settlement discussions and a mediated settlement conference." ECF No. 132, at 8. Plaintiff requested mediation "no later than the close of non-expert discovery." *Id.* Defendants, however, disagreed. Defendants demanded that Plaintiff make a settlement offer that they deemed "reasonable" as a precondition to mediation, while not making any offer themselves. ECF No. 132, at 9; *but see Schwartzman, Inc. v. ACF Indus.*, 167 F.R.D. 694, 699 (D.N.M. 1996) ("Were the purpose of a settlement conference merely to exchange offer and demand, there would be no need for any mediator.").

Following the parties' statements regarding mediation, the district court did not "select the ADR method and schedule the deadline for its completion" as required by the local rules—in either 2020 *or* 2022. LCvR 16.3(a) ("The presiding . . . judicial officer *will*, in the Scheduling Order or an ADR Order issued shortly thereafter, select the ADR method and schedule the deadline for its completion after considering counsel's responses in the Certificate of Initial Attorney's

9

Conference." (emphasis added)).  Accordingly, opportunities to resolve this case before protracted discovery, motions practice, and trial were missed.

The district court did not raise the possibility of mediation until July 27, 2023, during the final pretrial conference, approximately one month before the September 2023 trial date.  Plaintiff's remaining counsel—her spouse—even expressed concern about "the [PI] that has been pending so long" as well as "the resistance to mediation up until this" and the fact that "we asked for it before, it's required under the local rules here, we didn't get it."  ECF No. 262, at 16.

Plaintiff's concern that belated mediation was potentially a tactic for Defendants to delay the trial was well-founded.  At the time of the final pretrial conference, Defendants had a pending motion to continue the trial date.  ECF No. 252.  For example, Defendants' lead counsel was "out on parental leave" and was not "scheduled to return to work until September 1 or later." *Id.* at 1.  Though Defendants had been aware of the trial date since July 2022, they did not disclose this conflict until their motion to continue filed on June 16, 2023.  *Id.* at 1.

Unfortunately, this Court cannot assure itself that Defendants complied in good faith with the rules governing mediation.  The Mediator's Report *left blank* the portion of the report indicating who attended (or did *not* attend) the mediation:

> The parties were ☐ /were not ☐ present in person or by authorized corporate officer [except _____].

ECF No. 266.

Before the mediation, the presiding Magistrate Judge, who served as mediator, had issued an order by email stating that "TRIAL counsel and ALL NAMED PLAINTIFFS AND DEFENDANTS are ORDERED to be present and to have full settlement authority UNLESS EXCUSED BY THE COURT." Courts may require "the participation of fully authorized representatives in mandatory settlement proceedings." *Schwartzman*, 167 F.R.D. at 699. This requirement "applies to the government as well as private litigants." *Id.* (citation omitted).

Plaintiff should have not been forced to choose between attempting to resolve this case in good faith through mediation and forgoing her procedural rights, including her right to a prompt ruling on her PI motion. Regardless, Plaintiff's efforts to resolve this case through mediation since 2020 do not justify the district court's continued failure to rule in July 2024.

This the 3rd day of July, 2024.

Respectfully Submitted,

*/s/ Cooper Strickland*

Cooper Strickland
P.O. Box 92
Lynn, NC 28750
Tel. (828) 817-3703
cooper.strickland@gmail.com

*Counsel for Petitioner*

# CERTIFICATE OF SERVICE

I, Cooper Strickland, hereby certify that on this 3rd day of July, 2024, I will electronically file the foregoing with the Clerk of Court by using the appellate CM/ECF system, which will accomplish service on counsel for Respondent.

/s/ Cooper Strickland
Cooper Strickland

# CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) because it contains less than 2,600 words, excluding the parts exempted by Fed. R. App. P. 32(f). This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a 14-point, proportionally spaced typeface.

/s/ Cooper Strickland
Cooper Strickland
